ESTATE OF ROBERT W. GOREE, JR., DECEASED, ROBERT W. GOREE, ADMINISTRATOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Goree v. Commissioner
Docket No. 21098-92
United States Tax Court
T.C. Memo 1994-331; 1994 Tax Ct. Memo LEXIS 339; 68 T.C.M. (CCH) 123; July 20, 1994, Filed *339 Decision will be entered under Rule 155. For petitioner: Alan E. Rothfeder and Jo Karen Parr. For respondent: Robert W. West, John B. Harper, and Shuford A. Tucker, Jr.
WELLS
WELLS
MEMORANDUM FINDINGS OF FACT AND OPINION WELLS, Judge: Respondent determined a deficiency in petitioner's Federal estate tax in the amount of $ 376,708. [1] *340 The issues for decision are: (1) Whether partial disclaimers by decedent's children meet the requirements of section 2518(b); [2] (2) if they do not, whether respondent correctly computed the interest of decedent's surviving spouse, for purposes of the marital deduction under section 2056; and (3) whether petitioner is entitled to a credit for prior transfers under section 2013 for the Federal estate tax paid by the estate of decedent's grandfather. FINDINGS OF FACT Some of the facts and certain documents have been stipulated for trial pursuant to Rule 91. The stipulated facts are incorporated herein by reference. Petitioner is the Estate of Robert W. Goree, Jr. On October 7, 1988, Robert W. Goree, Jr. (decedent) died intestate as a result of an airplane crash. On October 12, 1988, decedent's father, Robert W. Goree, was appointed as administrator of decedent's estate by the Probate Court of Tallapoosa County, Alabama. [3] At the time the petition was filed in the instant case, Robert W. Goree was a resident of Alexander City, Alabama. Decedent was married twice prior to his death. Decedent's first wife died in a boating accident on August 14, 1983. Decedent had two children by his first wife, Robert W. Goree III and Kathryn Jean Goree. *341 Approximately 2 years after the death of decedent's first wife, decedent married Lisa Callahan (Mrs. Goree) on March 23, 1985. On February 4, 1986, Mrs. Goree formally adopted decedent's children. On January 7, 1987, Mrs. Goree gave birth to decedent's third child, Elisabeth Bryden Goree (Robert W. Goree III, Kathryn Jean Goree, and Elisabeth Bryden Goree are hereinafter referred to as decedent's children). At the time of decedent's death, decedent's children were minors. [4] Decedent was also survived by two brothers and two sisters. Decedent's mother, Julia Russell Goree, and his maternal grandfather, Thomas D. Russell, predeceased him. Mrs. Goree and decedent's children were decedent's only heirs at law under the Alabama law of intestacy. The principal asset owned by decedent on the date of his death was 232,939 shares of Russell Corp. common stock. Petitioner, on its Federal estate tax return, Form 706, reported *342 that decedent's shares of stock in the Russell Corp. had a fair market value of $ 3,873,609 on his date of death. Petitioner's Federal estate tax return also listed debts, mortgages, and funeral expenses of decedent's estate totaling $ 1,308,878. The Russell Manufacturing Co. (now the Russell Corp.) was formed in 1902 by decedent's great-grandfather, Benjamin C. Russell. The stock of the Russell Corp. became publicly traded during 1963, and the Russell Corp. is now the largest employer in Alexander City, Alabama. Of the 40 million shares of Russell Corp. common stock outstanding, the Russell family collectively holds the largest, single block of stock. The estate of Benjamin C. Russell owns 3,945,024 shares of Russell Corp. common stock. The Thomas D. Russell Marital Trust currently owns 83,125 shares of Russell Corp. common stock. Julia Walker Russell, the widow of Thomas D. Russell, owns 55,132 shares of Russell Corp. common stock, and the estate of Julia Russell Goree owns 439,936 shares of Russell Corp. common stock. Over the 10 years prior to the date of decedent's death, shares of Russell Corp. common stock have appreciated in value by 64.1 percent. Only 13 other corporations *343 listed on the New York Stock Exchange had a greater total return to investors over a 10-year period ending in 1990. Members of the Russell family have had a long tradition of working at the Russell Corp. Benjamin C. Russell's son, Thomas D. Russell, served as president and chairman of the board of the Russell Corp. until his death in 1982. Decedent's father was employed for a short period of time by the Russell Corp. Decedent worked at the Russell Corp. as a textile engineer for 20 years until he formed his own business during 1985. Mrs. Goree was also employed by the Russell Corp. beginning in 1977 until her marriage to decedent during 1985. Shortly after her marriage to decedent, Mrs. Goree started her own business, monogramming athletic apparel manufactured by the Russell Corp.
On October 27, 1988, Mrs. Goree was appointed the conservator of the estates of decedent's children. On June 19, 1989, decedent's father, Robert W. Goree, disclaimed any interest he might have in, or might have been entitled to receive from, decedent's estate. On June 20, 1989, Mrs. Goree, as conservator, filed petitions with the Probate Court of Tallapoosa County, Alabama, asking the court to *344 enter protective orders authorizing and directing the execution of partial disclaimers of each of her children's interests in decedent's estate. The proposed partial disclaimers were filed with the Probate Court along with the petitions requesting the protective orders. Each disclaimer renounced any interest in excess of $ 200,000 that the respective minor child was entitled to receive by way of intestate succession from decedent's estate. Affidavits signed by Mrs. Goree as conservator and receipts by the administrator of decedent's estate were also filed with the Probate Court on June 20, 1989. The Probate Court appointed Larry W. Morris to serve as guardian ad litem for decedent's children in the Probate Court proceedings for the petitions for protective orders authorizing the partial disclaimers. Mr. Morris was an attorney engaged in the private practice of law in Alexander City, Alabama, at the time of his appointment. Mr. Morris had served as a municipal judge for 20 years, president of the Alabama Trial Lawyers, and a member of the President's Council of the American Bar Association. On July 5, 1989, the judge of the Probate Court of Tallapoosa County, Alabama, held a *345 hearing on Mrs. Goree's petitions for protective orders authorizing her, as conservator, to execute partial disclaimers on behalf of her children to disclaim the children's interests in decedent's estate. No record or transcript of the Probate Court hearing was maintained. After the hearing on July 5, 1989, the Probate Court judge entered protective orders authorizing Mrs. Goree, as conservator, to execute the partial disclaimers on behalf of decedent's children. The partial disclaimers were to be delivered to the administrator of decedent's estate and filed with the Probate Court and the Circuit Court of Tallapoosa County, Alabama, prior to July 7, 1989. On July 6, 1989, the Probate Court orders, along with disclaimers and affidavits (which were separate from the disclaimers and affidavits filed with the Probate Court on June 20, 1989), were filed with the Probate Court and the Circuit Court as required. The administrator of decedent's estate acknowledged the receipt of the disclaimers by separate "Receipts of Administrator". Thomas D. Russell, decedent's maternal grandfather, died testate on January 18, 1982. Decedent was a beneficiary of the Thomas D. Russell Share B. Trust, *346 which was created under Mr. Russell's last will and testament. Mr. Russell's taxable estate, as determined by the Internal Revenue Service (IRS), was $ 3,931,966. Mr. Russell's estate paid Federal estate taxes in the amount of $ 1,497,417 and death taxes to the State of Alabama in the amount of $ 269,488. In the notice of deficiency, respondent determined that the disclaimers were not valid under Alabama law and disallowed the marital deduction for the property passing to Mrs. Goree as a result of the disclaimers. OPINION The first issue we must decide is whether the disclaimers executed on behalf of decedent's children meet the requirements of section 2518(b). Petitioner contends that it is entitled to a marital deduction for the value of the property which passed to Mrs. Goree as a result of the disclaimers. Section 2056(a) allows a marital deduction from a decedent's gross estate for the value of property interests passing from a decedent to his or her surviving spouse. Section 20.2056(d)-1(b), Estate Tax Regs., provides that, when property passes from a decedent to a person other than the surviving spouse, and that person makes a qualified disclaimer that results in the *347 surviving spouse's being entitled to such property, the disclaimed interest is treated as passing directly from decedent to the surviving spouse. Section 2518(b) defines a "qualified disclaimer" as follows: the term "qualified disclaimer" means an irrevocable and unqualified refusal by a person to accept an interest in property but only if -- (1) such refusal is in writing, (2) such writing is received by the transferor of the interest, his legal representative, or the holder of the legal title to the property to which the interest relates not later than the date which is 9 months after the later of -- (A) the day on which the transfer creating the interest in such person is made, or (B) the day on which such person attains age 21,
(3) such person has not accepted the interest or any of its benefits, and (4) as a result of such refusal, the interest passes without any direction on the part of the person making the disclaimer and passes either -- (A) to the spouse of the decedent, or (B) to a person other than the person making the disclaimer.
To satisfy the provision of section 2518(b)(4) requiring that the disclaimed interest pass without any direction *348 from the disclaimant to either the surviving spouse or to a person other than the disclaimant, the disclaimer must result in a valid passing of the interest to such person by operation of State law. Estate of Bennett v. Commissioner, 100 T.C. 42, 67 (1993). In other words, as Federal law does not prescribe rules for the passing of disclaimed property interests, disclaimed property which does not pass in a manner that is provided by State law violates the "without any direction" requirement of section 2518(b)(4), because it therefore must pass by direction of the disclaimant. In the instant case, respondent concedes that if the Court finds that the disclaimers are valid under Alabama law, then they are qualified disclaimers within the meaning of section 2518(b). Consequently, we will focus our inquiry on whether the interests of decedent's children in decedent's estate were properly disclaimed under Alabama law. Petitioner bears the burden of proof. Rule 142(a). [5]
*349 Alabama law authorizes the representative of a protected person who is an heir, devisee, or next of kin to disclaim, in whole or in part, the right of succession to any property or interest by delivering or filing a written disclaimer. [6]Ala. Code sec. 43-8-291(a) (1991). A "protected person" is defined as a minor [7] or other person for whom a conservator has been appointed or other protective order has been made as provided under sections 26-2A-136 and 26-2A-137 of the Alabama Code. Ala. Code sec. 26-2A-20(19) (1991). Alabama law authorizes the Probate Court to provide for the management, conservation, and control of the estate of a minor through either the appointment of a conservator for the minor's estate or by any protective order the court deems necessary. Ala. Code sec. 26-2A-130 (1991). If a petition for the appointment of a conservator or other protective order is filed with the Probate Court, the court may appoint an attorney to represent the minor and may set a date for a hearing on the petition. Ala. Code sec. 26-2A-135(a) (1991). The Probate Court may, after notice and a hearing, enter an order renouncing or disclaiming the interests of a protected person if the *350 court determines that it is in the best interests of the protected person. Ala. Code sec. 26-2A-136(c) (1991). In the instant case, respondent contends that we are required, under the Supreme Court's holding in Commissioner v. Estate of Bosch, 387 U.S. 456 (1967), to review the Probate Court proceedings de novo to ascertain what is in the best interests of decedent's children, rather than applying the standard of review used by the Alabama appellate courts when reviewing findings *351 of fact made by the lower courts. Respondent also contends that a de novo review of the Probate Court proceedings, based upon the testimony presented in the instant case, would show that the conservator's sole motive in seeking the protective orders authorizing the partial disclaimers was to minimize Federal estate taxes. Respondent contends that the disclaimers benefit only decedent's estate, through the reduction of Federal estate taxes, and, as a matter of Alabama law, are not in the best interests of decedent's children. In other words, respondent contends that the Probate Court judge misapplied Alabama law in deciding that the partial disclaimers were in the children's best interests, and that the disclaimers are therefore not valid under Alabama law. Accordingly, respondent argues that the disclaimers fail to qualify under section 2518(b) and that petitioner is therefore not entitled to a marital deduction for the value of the property interests passing to Mrs. Goree as a result of unqualified disclaimers. In Estate of Bosch v. Commissioner, supra at 465, the Supreme Court held that Federal courts are not bound by a State trial court's adjudication of property rights *352 under State law, but the State trial court's decision should be given due regard. The Supreme Court also stated that "state law as announced by the highest court of the State is to be followed". Id. The Supreme Court also stated that the State's intermediate appellate court decisions should be considered by Federal courts when deciding State law unless the Federal court is convinced that the highest court of the State would decide otherwise. Id.
To decide whether the highest court of Alabama would decide contrary to the Probate Court judge's decision in the instant case, we will consider the standard of review that the Alabama Supreme Court would use to review the Probate Court judge's decision. [8] See Estate of Salter v. Commissioner, 545 F.2d 494, 500 (5th Cir. 1977), affg. in part and revg. in part 63 T.C. 537 (1975); Estate of Melville v. Commissioner, T.C. Memo. 1993-484; Estate of Ridenour v. Commissioner, T.C. Memo. 1993-41. *353 Under Alabama law, a reviewing court must affirm the trial court unless its findings are "plainly and palpably erroneous". Florence v. Williams, 439 So. 2d 83, 85 (Ala. 1983); Thomas v. Davis, 410 So. 2d 889, 892 (Ala. 1982); Leslie v. Pine Crest Homes, Inc., 388 So. 2d 178 (Ala. 1980). The standard of review applied by both the Alabama Supreme Court and the Alabama Civil Court of Appeals in reviewing a lower court judge's exercise of discretion when deciding what is in the best interests of the protected person before the court is whether the judge's decision is "plainly and palpably erroneous". See Lankford v. Hollingsworth, 219 So. 2d 387 (Ala. 1969); In re Anonymous, 515 So. 2d 1254 (Ala. Civ. App. 1987); In re Miller, 473 So. 2d 1069 (Ala. Civ. App. 1985); In re Adoption of Williams, 472 So. 2d 1076 (Ala. Civ. App. 1985); Lawshe v. Seals, 443 So. 2d 1249 (Ala. Civ. App. 1983); State Dept. of Pensions & Sec. v. Whitney, 359 So. 2d 810 (Ala. Civ. App. 1978). *354 In the instant case, petitioner has shown that the Probate Court judge's decision to enter protective orders permitting Mrs. Goree, as conservator, to partially disclaim her children's interests in their father's estate was not "plainly and palpably erroneous". All of the parties to the Probate Court proceedings, as well as the Probate Court judge, testified at the trial in the instant case. [9]
During the Probate Court hearing and during the trial of the instant case, Mrs. Goree testified that her primary motivation in executing the disclaimers was to preserve the capital of decedent's estate so that she would be better able to provide for her children. [10] Mrs. *355 Goree testified that decedent never sold Russell Corp. stock during his lifetime despite the fact that he was paying interest on an $ 849,216 loan he incurred for an asset that was no longer producing income. Mrs. Goree testified that decedent's estate had to sell $ 850,000 worth of Russell Corp. stock in order to satisfy that debt. Mrs. Goree stated that she believed that decedent wanted his children to receive as much Russell Corp. stock as possible. Moreover, Mrs. Goree stated that she believed that decedent would have approved of the disclaimers because they were necessary to prevent the sale of more Russell Corp. stock by decedent's estate. Finally, Mrs. Goree stated that she regarded the interests decedent's children disclaimed in their father's estate to be relatively minor compared to the inheritances that they would ultimately receive from other members of the Russell family. *356 Decedent's father, Robert W. Goree, was not present at the Probate Court hearing but did testify in the instant case. Mr. Goree stated that he, along with the other members of his family, fully supported the execution of the disclaimers by Mrs. Goree. Moreover, Mr. Goree stated that he disclaimed any interest he might have been entitled to receive from his son's estate as a result of the children's disclaimers in order to insure that the disclaimed interests would pass to Mrs. Goree. Mr. Goree also testified that he believed that the disclaimers were in the children's best interests because it was the best way to preserve decedent's estate for the benefit of decedent's children. Additionally, Mr. Goree testified that decedent's grandfather was of the view that the family should not sell Russell Corp. stock as long as the company was doing well and that the grandfather's children had "inherited" their grandfather's philosophy. Mr. Goree stated that he believed that his son never sold any shares of Russell Corp. stock. Finally, Mr. Goree testified that upon his death, decedent's children would inherit 109,984 shares of Russell Corp. common stock from the estate of Julia Russell *357 Goree. The Probate Court judge testified that, during the Probate Court hearing, Mrs. Goree stated that she was seeking the disclaimers in order to preserve the capital of decedent's estate so that she could take better care of her children. Additionally, the Probate Court judge stated that he heard testimony regarding the inheritances decedent's children would be receiving in the future from other members of the Russell family and that all of such circumstances were factors in his decision to grant the protective orders authorizing the disclaimers. Mr. Morris, the guardian ad litem who represented the children in the Probate Court proceedings, testified that he initially objected to the entering of the protective orders permitting the partial disclaimers. Upon hearing the evidence presented and Mrs. Goree's arguments as to why it was in the best interests of her children to execute the partial disclaimers, Mr. Morris withdrew his objection. He testified that he was persuaded that the proposed course of action was in the best interests of the children. Respondent contends that the guardian ad litem and the Probate Court judge merely "rubber stamped" the conservator's petition *358 for protective orders and that they did not actually consider the best interests of the children. Respondent contends that the guardian ad litem and the Probate Court judge only considered whether the disclaimers would reduce petitioner's Federal estate taxes. We do not agree with respondent's contention that tax considerations were the only reason for Mrs. Goree's decision to request the protective orders. Certainly, tax considerations were present: Decedent's children disclaimed only the amount of their inheritance that exceeded the amount equivalent to the unified credit that was available to decedent's estate. The mere fact that the parties to the Probate Court proceedings considered the Federal estate tax consequences of the partial disclaimers, however, does not alone convince us that the Probate Court judge abused his discretion, or in the terms of the standard of review under Alabama law, was "plainly and palpably erroneous" in finding that the disclaimers were in the best interests of decedent's children. [11] There is nothing in Alabama law which instructs the Probate Court as to what factors must be considered when deciding what is in the best interests of minors coming *359 before the court. Based on the record of the instant case, the Probate Court, when deciding whether the disclaimers were in the best interest of decedent's children, considered the testimony that Mrs. Goree's ability to provide and care for her children would be greatly improved if decedent's Federal estate tax liability were minimized by making the partial disclaimers. The Probate Court judge also considered the testimony that both the Russell and the Goree families have a unique relationship to the Russell Corp. (including the families' long-held philosophy of retaining Russell Corp. stock for the benefit of their descendants which would inure to the benefit of decedent's children). The Probate Court judge also heard testimony that decedent's children are likely to receive large inheritances upon the deaths of other members of the Russell and Goree families. Consequently, there was support for the Probate Court judge's finding that the disclaimers served the best interests of decedent's minor children. *360 The only question we are asked to decide in the instant case is whether the interests in decedent's estate were properly disclaimed under Alabama law. Respondent argues that the interests were not properly disclaimed because the disclaimers were not in the best interests of decedent's children and that we must undertake a de novo review of the Probate Court disclaimer proceedings. [12] We do not agree with respondent's contention that we are required to make such a review. Under Alabama law, the proper standard guiding our review of the Probate Court judge's decision is whether his decision was "plainly and palpably erroneous". Based on the record in the instant case, we hold that the Probate Court judge's decision as to the question of what was in the best interests of decedent's children was not "plainly and palpably erroneous" and that the partial disclaimers were therefore properly made under Alabama law. Consequently, the disclaimers qualify under section 2518(b), and petitioner is entitled to a marital deduction under section 2056(a) for the disclaimed interests. *361 Petitioner states on brief that, in the event we decide that the disclaimers meet the requirements of section 2518(b), we need not consider the issue of whether respondent's determination of Mrs. Goree's intestate share of decedent's estate was made in accordance with Alabama law. Accordingly, we do not address that issue. Finally, we must decide whether petitioner is entitled to a credit for prior transfers under section 2013 for the Federal estate tax paid by the estate of decedent's grandfather, Thomas D. Russell. Section 2013 allows a credit against the Federal estate tax imposed by section 2001 for all or a part of the Federal estate tax paid with respect to the transfer of property to a decedent by or from a person who died within 10 years before, or 2 years after, the decedent's death. To qualify for a credit under section 2013, the following conditions must be satisfied: (1) Property must have been transferred to the decedent by another decedent (the transferor); (2) the transferor must have died within 10 years prior to or 2 years subsequent to the decedent's date of death; (3) the transferor's estate must have been subject to Federal estate tax as defined in section *362 2013(b); and (4) the transferred property must have been included in the transferor's gross estate. Additionally, if the transferor predeceased the decedent by more than 2 years, the amount of the credit, as determined under section 2013(b), is reduced on the basis of the length of time between the date of death of the decedent and the date of death of the transferor. Sec. 2013(a). On the basis of the record in the instant case, we are unable to conclude that the requirements of section 2013(a) have been met. While the record contains a copy of Mr. Russell's last will and testament, the Estate Tax Closing Letter, Form 1273, Report of Estate Tax Examination Changes, and Form 3228, Adjustments to Taxable Estate, it does not contain a copy of the Federal estate tax return for Mr. Russell's estate or any other evidence which would inform us as to what specific assets were included in Mr. Russell's estate that were transferred to decedent. Accordingly, petitioner has failed to meet its burden of proof as to the first element of section 2013 set forth above. Rule 142(a). Consequently, we hold that petitioner is not entitled to a credit under section 2013. To reflect the foregoing, *363 Decision will be entered under Rule 155. Footnotes
1. Respondent's notice of deficiency states that in the event petitioner provides evidence of the payment of State inheritance, legacy, or succession taxes as required by sec. 20.2011-1, Estate Tax Regs., within the 90-day period beginning with the notice of deficiency, petitioner would be entitled to a maximum credit of $ 66,350 for State death taxes, which would reduce the amount of the deficiency to $ 310,358.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at the time of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. Shortly thereafter, Mr. Goree removed the estate from the Probate Court to the Circuit Court of Tallapoosa County, Alabama.↩
4. Robert W. Goree III was born on Feb. 23, 1978, and Kathryn Jean Goree was born on Oct. 15, 1979.↩
5. Respondent's notice of deficiency is entitled to a presumption of correctness, and petitioner bears the burden of establishing that the notice is arbitrary. Helvering v. Taylor, 293 U.S. 507, 515 (1935). Petitioner contends that we are only required to review the Probate Court proceedings to decide whether the Alabama Supreme Court would hold that the Probate Court judge's decision authorizing the partial disclaimers was "plainly and palpably erroneous" and that respondent should therefore bear the burden of proving that the Probate Court judge did not properly exercise his discretion in authorizing the disclaimers. Even if petitioner were to demonstrate that the notice of deficiency was arbitrary, only the burden of going forward with the evidence would shift to respondent. The burden of persuasion remains with petitioner. See Schaeffer v. Commissioner, T.C. Memo. 1994-206. Consequently, we treat petitioner's argument as one for shifting the burden of going forward with the evidence to respondent. We hold that petitioner's argument is without merit. The fact that we are required to review a lower State court proceeding in order to decide whether the lower State court's findings are contrary to State law pursuant to the Supreme Court's holding in Commissioner v. Estate of Bosch, 387 U.S. 456 (1967), does not shift the burden of proof to respondent. Estate of Rowan v. Commissioner, 54 T.C. 633, 639↩ (1970). Accordingly, petitioner bears the burden of proof in the instant case.
6. The disclaimer must be filed with the Probate Court in the county where the administration of the estate has been commenced and must be filed within 9 months after the death of a decedent. Ala. Code sec. 43-8-292(a) (1991). A disclaimer of a property interest has the effect of passing the disclaimed interest as if the disclaimant had predeceased the decedent. Ala. Code sec. 43-8-294(a)↩ (1991).
7. A "minor" is defined as any person who is under 19 years of age. Ala. Code sec. 26-2A-20(11)↩ (1991).
8. An appeal from a final order of the Probate Court lies to the Circuit Court or the Alabama Supreme Court. Ala. Code sec. 12-22-20↩ (1991).
9. As stated above, there was no record or transcript of the Probate Court proceedings. Unlike the Alabama Supreme Court or the Alabama Circuit Court, which would have to review the Probate Court proceedings without the benefit of a transcript, we had all of the parties, as well as the Probate Court judge, appear and testify before us in the instant case.↩
10. Respondent does not argue that, and we do not decide whether, the disclaimers are invalid because the children might directly benefit from the interests in decedent's estate which they disclaimed. See sec. 2518(b)(3).↩
11. Respondent suggests on brief that the only foreseeable situation in which a minor would disclaim a valuable property interest would be when the minor is dying "and might wish to disclaim valuable property rights so as not to add value to his own estate" or in the case of property that brings with it an undesirable liability. We think that respondent's examples are much too narrow.↩
12. Respondent also argues that Mrs. Goree, as conservator, violated her fiduciary duty to prudently manage the property of the estates of decedent's children. Respondent contends that, because Mrs. Goree ultimately received the interests in decedent's estate disclaimed by decedent's children, Mrs. Goree engaged in self-dealing, which is prohibited by Alabama law. Under Alabama law, any transaction involving an estate being administered by a conservator which is affected by a substantial conflict between the conservator's personal interests and the estate is voidable unless the transaction is approved by the court. Ala. Code sec. 26-2A-150↩ (1991). In the instant case the Probate Court judge not only granted the protective orders authorizing the execution of the disclaimers by Mrs. Goree, but he also appointed a guardian ad litem to represent the children's interests in decedent's estate during the Probate Court proceedings. Consequently, respondent's argument is without merit.